# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 21-1124V

| | |
|---|---|
| REBECCA HAWES,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: April 19, 2024 |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Mary Eileen Holmes, U.S. Department of Justice, Washington, DC,* for Respondent.

## **FINDINGS OF FACT**[1]

On March 29, 2021, Rebecca Hawes filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered from Guillain-Barré syndrome ("GBS") after receiving an influenza ("flu") vaccine on January 7, 2019. Petition at 1.

For the reasons discussed below, I find that it is more likely than not that Petitioner received a flu vaccine on January 6 or 7, 2019.

### I.  Relevant Procedural History

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

With her Petition, Ms. Hawes filed the affidavit and medical records required by the Vaccine Act. *See* Ex. 1-8, filed March 29, 2021, ECF No. 1. Despite her efforts, including a subpoena, Petitioner was unable to provide a vaccine administration record. On September 8, 2022, Respondent filed his Rule 4(c) Report opposing compensation because "Petitioner has failed to establish by preponderant evidence that she in-fact received a vaccine covered by the Vaccine Injury Table." Rule 4(c) Report at 8.

On January 31, 2023, Petitioner filed a Motion for Ruling on the Record ("Mot.") arguing that, despite the lack of an official administration record, her contemporaneous records coupled with sworn testimony from witnesses provide preponderant evidence that she received an influenza vaccination on January 7, 2019. Mot. at 5-7. Respondent filed a response ("Resp.") on May 18, 2023 (ECF No. 37) and Petitioner filed a reply ("Repl.") on June 14, 2023 (ECF No. 38).

## II.     Issue

At issue is whether, despite the absence of a vaccine record, Petitioner received a flu vaccine on January 7, 2019, as alleged.

## III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). As a threshold matter, to prevail under the Vaccine Act a petitioner must establish that she "received a vaccine set forth in the Vaccine Injury Table." Section 11(c)(1)(A).

When presented with preponderant evidence – such as consistent references in contemporaneously created medical records and/or credible witness testimony - special masters have found sufficient proof of vaccination even in cases lacking a written contemporaneous record memorializing the event. *Hinton v. Sec'y of Health & Hum. Servs.*, No. 16-1140V, 2018 WL 3991001, at *10-11 (Fed. Cl. Spec. Mstr. Mar. 9, 2018); *Gambo v. Sec'y of Health & Hum. Servs.*, No. 13-0691V, 2014 WL 7739572, at *3-4 (Fed. Cl. Spec. Mstr. Dec. 18, 2014); *Lamberti v. Sec'y of Health & Hum. Servs.*, No. 99-0507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007). However, evidence has found to be insufficient in cases involving inconsistencies related to Petitioner's vaccination status and the events surrounding vaccination. *Matthews v. Sec'y of Health & Hum. Servs.*, No. 19-0414V, 2021 WL 4190265, at *6-7, 9 (Fed. Cl. Spec. Mstr. Aug.

2

19, 2021) *aff'd* 157 Fed. Cl. 777 (2021) (petitioner's reliance primarily on later notations of an allergic reaction).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.     Findings of Fact

I make these findings after a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I base my findings on the following evidence:

- In both her Petition and affidavit, Petitioner alleges that she received a flu vaccine on January 7, 2019 from her primary care provider, Dr. Gregory Moreland. Petition at ¶1; Ex. 8 at ¶2.

- The record of Petitioner's January 7, 2019 appointment does not contain any reference to vaccination. Ex. 5 at 11-12. Dr. Moreland's office submitted a claim for the January 7, 2019 office visit to Petitioner's insurance, but it does not reference or seek reimbursement for the cost of a vaccination administered on that date. Ex. 14 at 5.

- Petitioner previously received flu vaccines at Dr. Moreland's office on January 13, 2016 and on October 5, 2016. Although the record from those visits do not mention any vaccinations (*see* Ex. 5 at 28, 32), Petitioner's insurance was billed for both office visits and both vaccinations. *See* Ex. 14 at 3.

- On January 21, 2019, Petitioner was treated in the emergency room for complaints of "disequilibrium, paresthesias, and gait difficulty." Ex. 2 at 59. She reported that her symptoms began the previous Friday (January 18, 2019). *Id*. at 72-74. During a neurology consult on the same day, Petitioner reported that "[o]n January this 6 she got a flu shot." *Id*. at 99. During an evaluation with a hospital ophthalmologist on January 22, 2019, it was recorded that Petitioner had a "recent flu vaccine in Dec." *Id.* at 114.

- On January 24, 2019, Petitioner was transferred to another hospital for treatment for her GBS. Ex. 2 at 119; Ex. 3 at 6. Upon her admission, Petitioner reported that "she had a flu shot 1/7/19." *Id*. at 10.

- In a letter dated February 26, 2020, Dr. Moreland's office indicated that it did not have a vaccine administration record for a flu vaccination on January 7, 2019. Ex. 1 at 1.

- Petitioner attempted to subpoena further records from Dr. Moreland's office. ECF No. 19-21. The process server found Dr. Moreland's office closed and

- the building vacant. Ex. 11 at 1. The process server stated in his affidavit that he spoke to a neighboring business and was told that Dr. Moreland's office had been closed since 2020. *Id*.

- As of January 7, 2019, Petitioner was then living with Mr. Steve Mallett. *See* Ex. 12 at ¶2. Mr. Mallett has provided a declaration in which he states that he "recall[s Petitioner] telling him that she received a flu vaccine" on January 7, 2019 and that he recalls "the onset of her symptoms, including trouble balancing, beginning a few weeks after her flu vaccine." *Id*. at ¶3.

- Petitioner's mother also provided a declaration stating that she spoke to Petitioner "both before and after her appointment at Dr. Moreland's office" on January 7, 2019. Ex. 13 at ¶2. She recalls that Petitioner told her that "she received a flu vaccine." *Id*.

In this case, the medical records establish that Petitioner consistently reported that she had received a flu shot very close in time to the start of her GBS symptoms. At the time of her emergency room visit on January 21, 2019, Petitioner reported receiving the vaccine on January 6, 2019. Ex. 2 at 99. When she transferred hospitals three days later, Petitioner again reported that she had received a flu vaccine (albeit on a different date - January 7, 2019). Ex. 3 at 10. Both of those reports further state that Petitioner reported cold symptoms the weekend after her vaccination but which had resolved prior to her GBS symptoms. Although there is one notation to a flu vaccine in December from Petitioner's hospitalization, it states only "recent flu vaccine in Dec." without any further context. Ex. 2 at 114. Petitioner's consistent statements regarding her vaccination and the subsequent course of her illness, particularly when stated only 14-15 days after her vaccination and for the purpose of obtaining medical treatment, provide strong evidence in support of the alleged vaccination event.

Both parties make arguments for or against the fact of vaccination by relying on the available records of Dr. Moreland's office and the records of Petitioner's insurance claims. Petitioner argues that her insurance records, which show claims for flu vaccines on January 13, 2016 and October 5, 2016, confirm that "it was not standard practice for Dr. Moreland's office to document when a vaccine was given." Mot. at 5. Respondent, conversely, argues that because Petitioner's insurance records do *not* contain a claim for a flu vaccination on January 7, 2019 (but did for flu vaccines in 2016), his office likely only billed for vaccinations when administered. Resp. at 6. The most I can glean from these competing interpretations of the record is that Dr. Moreland's recordkeeping cannot reasonably be seen as reliable, diminishing the weight I can give to this subset of evidence.

Overall, however, Petitioner's own assertions – which were issued to contemporaneous treaters, close in time to the alleged vaccination - are sufficiently corroborated by the medical record to accept her contention that she likely received a flu vaccine in January 2019. Her allegations are also corroborated by witness statements obtained from both her mother and roommate at the time. Thus, even though the fact of vaccination cannot be conclusively established, it is enough of a "close call" to be decided in Petitioner's favor – as Program case law reasonably counsels. *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013).

Thus, Petitioner has provided preponderant evidence establishing that she received a flu vaccine intramuscularly in January 2019 – although it cannot clearly be determined whether she received the vaccine on January 6 or January 7, 2019.

### V.     Scheduling Order

In light of my findings regarding Petitioner's vaccination, Respondent shall file a status report indicating how he intends to proceed following my ruling by no later than **Friday, May 24, 2024**. The status report shall indicate whether he is willing to engage in discussions regarding settlement or proffer or wishes to continue to defend this case.

Petitioner should finalize a reasonable demand which she should convey, along with any needed supporting documentation, to Respondent. Petitioner shall file a status report updating me on the status of her demand by no late than **Friday, May 24, 2024**.

**IT IS SO ORDERED.**

                       **s/Brian H. Corcoran**
                       Brian H. Corcoran
                       Chief Special Master